UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| RUSSELL CARVER, III, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 6:17-cv-0014-GFVT |
| | ) | |
| v. | ) | |
| | ) | |
| OFFICER AVINA, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| Defendants. | ) | **ORDER** |

\*\*\* \*\*\* \*\*\* \*\*\*

Plaintiff Russell Carver is an inmate formerly confined at the Federal Correctional Institution (FCI)-Manchester in Manchester, Kentucky. Proceeding without counsel, Carver has filed a civil rights complaint against prison officials asserting claims under 28 U.S.C. § 1331, pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). [R. 1; R. 4.]

Defendants Officer Avina, Counselor Crase, Officer Church, Counselor Campbell and S. Butler (collectively, "Defendants") have filed a motion to dismiss or, in the alternative, motion for summary judgment. [R. 37.] Pursuant to the Court's Order entered July 31, 2018, Carver was required to file a response to Defendants' motion on or before September 13, 2018. [R. 42.] However, that time period has now expired, and no response has been filed by Carver. Thus, this matter is ripe for review.

**I**

Carver's complaint alleges that, while Carver was confined at FCI-Manchester, he was exposed to secondhand smoke, or Environmental Tobacco Smoke (ETS), in violation of the Eighth Amendment prohibition against cruel and unusual punishment, as well as 18 U.S.C. §

1791(a)(2) and Bureau of Prisons (BOP) policy. [R. 1; R. 4 at 2.[1]] Carver seeks $10 million dollars in compensatory and punitive damages. [R. 4 at 8.]

In their motion, Defendants argue that Carver's complaint should be dismissed because: 1) the Supreme Court has never recognized a similar Eighth Amendment claim against federal correctional officers, in their individual capacity, for exposing an inmate to secondhand smoke, and *Bivens* should not be extended because special factors counsel hesitation; 2) Carver's complaint is untimely; 3) Carver fails to state a claim for which relief may be granted; and 4) the Defendants are entitled to qualified immunity. [R. 37-1] In the alternative, Defendants seek summary judgment. *Id.*

Before addressing the merits of Defendants' motion, the Court notes that, on July 2, 2018, the Court entered an order directing Carver to file a response to Defendants' motion within 45 days and specifically warned him that, if he failed to do so, the Court may dismiss his case for failure to prosecute, *see* Fed. R. Civ. P. 41(b), or grant Defendants' motion for any reason adequately supported by the record, *see Carver v. Bunch*, 946 F.2d 451, 454–55 (6th Cir. 1991). [R. 38.] On July 30, 2018, Carver filed a motion to appoint counsel or, in the alternative, motion for an extension of time to retain counsel. [R. 41.] On July 31, 2018, the Court entered an Order denying Carver's request for counsel but providing him with an additional 28 days to file a response to Defendants' motion. [R. 42.] The Court's Order specified that Carver must file a response to Defendants' motion on or before September 13, 2018. *Id.*

---

[1] Carver's original complaint [R.1] was not filed on a Court-supplied form and, accordingly, was not in compliance with the Court's Local Rule 5.2 (a), (b). Carver was sent a form Civil Rights Complaint [EDKY Form 520] and directed to complete the form in its entirety to ensure that he provided the Court with all necessary information. [R. 3.] Although Carver did submit an "amended complaint," consisting of a Civil Rights Complaint [EDKY Form 520], he failed to complete some of the sections of the form. [R. 4.] Thus, as neither complaint submitted by Carver is complete, the Court has looked to Carver's allegations made in both complaints and will cite to each accordingly.

Carver's extended response deadline has now expired, and Carver has not filed any response or taken any other action in this case. Carver was specifically warned that his failure to file a response may result in the dismissal of his case for failure to prosecute. Dismissal is generally warranted where the party fails to act in the face of a clear prior warning that the case would be dismissed. *Bowles v. City of Cleveland*, 129 F. App'x 239, 244 (6th Cir. 2005). Thus, Carver's failure to respond alone would justify dismissal of his Complaint.

Regardless, in the interest of completeness and finality, the Court will also consider the substantive arguments set forth by Defendants in their motion to dismiss or, in the alternative, motion for summary judgment.

## II

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the sufficiency of the plaintiff's complaint. *Gardner v. Quicken Loans, Inc.*, 567 F. App'x 362, 364 (6th Cir. 2014). When addressing a motion to dismiss, the Court views the complaint in the light most favorable to the plaintiff and accepts as true all 'well-pleaded facts' in the complaint. *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014). Because Carver is proceeding without the benefit of an attorney, the Court reads his complaint to include all fairly and reasonably inferred claims. *Davis v. Prison Health Servs.*, 679 F.3d 433, 437–38 (6th Cir. 2012).

### A

The Court agrees that Carver's complaint must be dismissed as untimely. Although Carver's amended complaint does not specify the date on which the events giving rise to the complaint occurred, his original complaint and his administrative remedy request submitted with his complaint both specify that he was allegedly exposed to secondhand smoke on September 16, 2014. [R. 1 at 3; R. 1-1 at 5, 8; R. 1-2 at 3–4.] Indeed, throughout the administrative remedy

process, the only specific instance of exposure to secondhand smoke identified and relied upon by Carver as the basis for his claim allegedly occurred on September 16, 2014. [R. 1-2 at 3, R. 37-2 at 58–66.] Carver further states that he began to have physical symptoms that he attributed to his exposure to secondhand smoke on November 18, 2014. [R. 1-1 at 5.] Thus, at the very latest, Carver's claim accrued on November 18, 2014, when he became aware of the injury which forms the basis of his claims, his respiratory complaints allegedly caused by his exposure to secondhand smoke. *Estate of Abdullah ex rel. Carswell v. Arena*, 601 F. App'x 389, 393–94 (6th Cir. 2015) ("Once the plaintiff knows he has been hurt and who has inflicted the injury, the claim accrues.") (internal quotation marks omitted) (citing *United States v. Kubrick*, 444 U.S. 111, 122 (1979)).

In *Bivens* actions, federal courts "apply the most analogous statute of limitations from the state where the events giving rise to the claims occurred." *Baker v. Mukasey*, 287 F. App'x 422, 424 (6th Cir. 2008). Carver's claims arose in Kentucky and, therefore, Kentucky's one-year statute of limitations for asserting personal injury claims applies to his federal constitutional claim. *See id.*; *see also* Ky. Rev. Stat. Ann. § 413.140(1)(a); *Hornback v. Lexington-Fayette Urban Co. Govt.*, 543 F. App'x 499, 501 (6th Cir. 2013); *Mitchell v. Chapman*, 343 F.3d 811, 825 (6th Cir. 2003).

Before he could file suit, however, Carver was required to exhaust his administrative remedies available under the BOP's Inmate Grievance Program. 42 U.S.C. § 1997e(a); *Jones v. Bock*, 549 U.S. 199, 205–07 (2007). When a claimant is required to exhaust such remedies before bringing suit, the limitations period is tolled while he or she does so, as long as such remedies are pursued diligently and in good faith. *Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000). The BOP's Inmate Grievance Program requires a federal prisoner to first seek informal

4

resolution of any issue with staff, and then to institute a formal grievance with the warden within twenty days. 28 C.F.R. § 542.13, 542.14(a). If the prisoner is not satisfied with the warden's response, he or she must appeal to the appropriate regional office within twenty days, and if unsatisfied with that response, to the General Counsel within thirty days thereafter. 28 C.F.R. § 542.15(a). *See* BOP Program Statement 1300.16.

On September 25, 2014, Carver filed a Request for Administrative Remedy (a "BP-9") complaining that Defendant Avina was smoking a cigarette in front of the B-Building with two other officers on September 16, 2014. [R. 37-2 at 58–59.] After Carver was unsatisfied with the response, he filed a Regional Administrative Remedy Appeal (a "BP-10") on October 31, 2014. [R. 37-2 at 61–62.] After the Regional Director denied his appeal, Carver filed an appeal at the Central Office (a "BP-11") on December 11, 2014. [R. 37-2 at 64–65.]

The National Appeals Administrator did not respond to this appeal until March 14, 2016. [R. 1-2 at 2.] However, by regulation, the Central Office is required to respond to an appeal within forty days. 28 C.F.R. § 542.18. Although that time period for response may be extended once by 20 days, its failure to respond within 60 days is deemed a constructive denial of the appeal. 28 C.F.R. § 542.18. Thus, equitable tolling of the limitations period ceased on February 9, 2015, which is sixty days after Carver submitted his BP-11 on December 11, 2014. *Jordan v. U.S. Dept. of Justice*, No. 7: 15-CV-138-KKC (E.D. Ky. 2015), *aff'd*, No. 17-5467 (6th Cir. Mar. 7, 2018) (holding that equitable tolling ceases once the time period for the agency to respond has expired under its regulations) (citing *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011) ("It is well established that 'administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance.'")); *Burley v. Federal Bur. of Prisons*, No. 6: 15-04-DCR, 2015 WL 3973076, at *3 (E.D. Ky. June 30, 2015).

While a response from the BOP's Central Office was due in February 2015 and Carver could have filed suit at that time, he continued to wait long after that deadline had come and gone to file his lawsuit with respect to his claims. Indeed, he kept waiting for an additional thirteen months until the BOP finally issued its response on March 14, 2016. Even then, he waited nearly another year before filing his lawsuit on January 23, 2017. [R. 1.]

Carver's unexplained failure to either promptly file suit after the February 2015 deadline passed, or at least to inquire further with the BOP about a response, forecloses reliance upon equitable tolling to avoid a limitations bar. The tolling of the statute of limitations is an equitable remedy which requires diligence in the pursuit of those remedies. *Miller v. Collins*, 305 F. 3d 491, 495–96 (6th Cir. 2002); *Irwin v. Dept. of Veterans' Affairs*, 498 U.S. 89, 96 (1990) ("We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period . . . [but we] have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights.").

In *Miller*, a state appellate court issued a decision which triggered the running of the limitations period to seek federal habeas relief, but the petitioner did not receive the state court decision until six months later. The petitioner was entitled to equitable tolling for this period in significant part because he "did not passively await decision" in the underlying case but instead had filed a motion seeking adjudication of his claims while still waiting (so he thought) for a decision to be issued. *Miller*, 305 F.3d at 496. Here, Carver did nothing but wait passively for more than a year beyond a clearly-established deadline without acting. Even after the Central Office issued its decision in March 2016, Carver then waited almost another year before filing suit in January 2017, displaying none of the diligence present in *Miller*.

In addition, in *Miller*, the Sixth Circuit noted that Miller's decision to wait was reasonable precisely because "[f]rom a litigant's perspective, it is a difficult, if not impossible endeavor, to estimate how long a reviewing court will take to decide a particular motion." *Id*. In contrast, the BOP is limited by regulation to at most sixty days to decide an appeal. 28 C.F.R. § 542.18. In sum, none of the hallmarks of diligence found in *Miller* are present here, and equitable tolling is not warranted beyond February 2015 under the "deemed denial" provision set forth in BOP regulations. Because Carver did not file his complaint more than one year after the date his claims accrued, nor after the equitable tolling of the limitations period ceased, his claim is barred by the applicable statute of limitations and must be dismissed. *Dellis v. Corr. Corp. of Am.,* 257 F.3d 508, 511 (6th Cir. 2001).

B

Even if Carver's complaint were timely, it would still be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Carver alleges that his exposure to secondhand smoke constitutes "cruel and unusual punishment" in violation of his Eighth Amendment rights. The Eighth Amendment prohibits any punishment which violates civilized standards of decency or "involve[s] the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102–03 (1976) (internal quotation marks and citation omitted). The Constitution "does not mandate comfortable prisons," but the Eighth Amendment requires prison officials to provide inmates with humane conditions of confinement, including "adequate food, clothing, shelter, and medical care, and...'reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

To establish an Eighth Amendment violation, a prisoner must demonstrate that he was deprived of "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S.

7

337, 347, (1981); *Wilson v. Seiter*, 501 U.S. 294 (1991) (an Eighth Amendment claim is stated where a prisoner is denied some element of civilized human existence due to deliberate indifference or wantonness); *Street v. Corrections Corp. of America*, 102 F.3d 810, 814 (6th Cir. 1996). However, "[e]xtreme deprivations are required to make out a conditions-of-confinement claim" under the Eighth Amendment. *Hudson v. McMillian,* 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson,* 832 F.2d 950, 955 (6th Cir.1987).

An Eighth Amendment claim has both an objective and subjective component: (1) a sufficiently grave deprivation of a basic human need; and (2) a sufficiently culpable state of mind. *Wilson* 501 U.S. at 298. Thus, to state a viable Eighth Amendment claim, an inmate must allege that a prison official: 1) was actually aware of a substantial risk that the plaintiff would suffer serious harm; and 2) knowingly disregarded that risk. *Farmer*, 511 U.S. at 837.

In *Helling v. McKinney*, the Supreme Court addressed an Eighth Amendment claim in the context of a claim of exposure to ETS. With respect to the objective factor, the Supreme Court held that the plaintiff "must show that he himself is being exposed to unreasonably high levels of ETS." 509 U.S. 25, 36 (1993). The Court further noted that analysis of the objective factor "requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Id*. (emphasis in original).

Here, Carver fails to allege facts showing that he was exposed to unreasonably high levels of ETS. Rather, Carver's complaint alleges one specific incident in which Officer Avina

was smoking a cigarette while standing outside the front of a prison building. [R. 1-2 at 3.] Such sporadic, isolated exposure to ETS does not establish a substantial risk to Carver's health that is "so grave that it violates contemporary standards of decency." *Helling*, 509 U.S. at 36. *See also Henderson v. Martin*, 73 Fed.Appx. 115, 118 (6th Cir. 2003); *Hunt v. Reynolds*, 974 F.2d 734, 735 (6th Cir. 1992) (mere discomfort or inconvenience fails to establish deliberate indifference to inmate's serious medical needs).

Nor do the facts alleged by Carver support the conclusion that any of the Defendants were subjectively aware of any risk of harm to Carver as a result of any isolated exposure to ETS and knowingly disregarded that risk. Although courts have recognized that prison officials may have heightened duties to limit exposure to ETS with respect to a prisoner with asthma or another respiratory condition, *Johnson v. Lappin*, 478 F. App'x 487, 491–92 (10th Cir. 2012); *Powers v. Snyder*, 484 F.3d 929, 932 (7th Cir. 2007), the medical records submitted by Carver show that he did not seek treatment with respect to his respiratory complaints until November 2014. [R. 1-2 at 5–9.] Indeed, he specifically states that he first complained of ETS and secondhand smoke on September 16, 2014, the date he was allegedly exposed to ETS by Avina's smoking outside of the prison building. [R. 1-1 at 8.] He simply alleges no facts showing that Defendants were subjectively aware of any risk of harm to Carver and knowingly disregarded that risk. Thus, Carver's complaint also fails to state a claim with respect to the subjective component of the Eighth Amendment analysis.

In addition, the extent that Carver's claims are based upon his allegation that Defendants were smoking in a non-designated smoking area in violation of BOP Policy Statements 1640.04 and 1640.05, even accepting this allegation as true, "[i]mperfect enforcement of [a prison smoking] policy shows, at most, negligence by the defendants, rather than deliberate

indifference." *Taylor v. Boot*, 58 Fed.Appx. 125 (6th Cir. 2003); *Harris v. Murray*, 761 F.Supp. 409, 412 (E.D. Va. 1990) (dismissing Eighth Amendment claim for exposure to secondhand smoke). More critically, BOP Program Statements are not "laws" which may be broken. Rather, they are merely internal agency guidelines and manuals, and they are not promulgated in compliance with the Administrative Procedures Act. *Reno v. Koray*, 515 U.S. 50, 61 (1995). Accordingly, they do not carry the force of law and do not create substantive rights that may be enforced by any person. *United States v. Craveiro*, 907 F.2d 260, 264 (1st Cir. 1990); *Schweiker v. Hansen*, 450 U.S. 785, 789 (1981). Because a federal employee's failure to adhere to a Program Statement does not constitute a violation of federal law, any "claim" under a Program Statement fails as a matter of law. *United States v. Loughner*, 782 F. Supp. 2d 829, 831 (D. Ariz. 2011); *Callahan v. Patton*, No. 07-CV-54-JMH, 2007 WL 1662695, at *5 (E.D. Ky. June 4, 2007).

Finally, although Carver also cites to 18 U.S.C. § 1791 [R. 4 at 4], the federal statute prohibiting providing or possessing contraband in prison, this statute is a criminal statute. Because a private citizen lacks a judicially cognizable interest in the criminal prosecution of another, *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973), a civil plaintiff has no standing to assert a claim arising under a criminal statute. *Chrysler Corp. v. Brown*, 441 U.S. 281, 316 (1979) ("This Court has rarely implied a private right of action under a criminal statute, and where it has done so 'there was at least a statutory basis for inferring that a civil cause of action of some sort lay in favor of someone.'").

## III

For all of these reasons, Carver fails to state a claim for which relief may be granted against Defendants. Accordingly, Defendants' motion to dismiss will be granted and Carver's

Complaint will be dismissed with prejudice. Because the Court finds that Carver fails to state a claim, it need not reach the Defendants' arguments that the Court should decline to apply a *Bivens* remedy in this context and that Defendants are entitled to qualified immunity, nor does it address Defendants' argument that summary judgment is appropriate.

Accordingly, it is **ORDERED** as follows:

1. Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment [**R. 37**] is **GRANTED IN PART** to the extent that it seeks dismissal of Plaintiff's Complaint as untimely and for failure to state a claim for which relief may be granted;

2. Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment [**R. 37**] is **DENIED IN PART AS MOOT** to the extent that Defendants' Motion seeks relief on other grounds;

3. Plaintiff's Complaint [**R. 1**] and Amended Complaint [**R. 4**] are **DISMISSED WITH PREJUDICE**;

4. The Court will enter a Judgment contemporaneously with this order; and

5. This action is **DISMISSED** and **STRICKEN** from the Court's docket.

This 28th day of September, 2018.

Gregory F. Van Tatenhove
United States District Judge